## DAVIDSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8308.

Circuit Court of Appeals, Fifth Circuit.

July 16, 1937.

Rehearing Denied Aug. 13, 1937.

Geo. S. Atkinson, of Dallas, Tex., for petitioner.

Norman D. Keller, Sewall Key, and Warren F. Wattles, Sp. Assts. to Atty. Gen., James W. Morris and Robert H. Jackson, Asst. Attys. Gen., and Morrison Shafroth, Chief Counsel, Bureau of Internal Revenue, and Charles H. Curl, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Adam H. Davidson and his wife, Clifford Drake Davidson, domiciled in Dallas, Tex., filed separate returns for income taxes for the calendar year 1927, dividing the community income, under the Texas law, between them. The Commissioner determined a deficiency of $19,859.53 as to each taxpayer. On petition to the Board of Tax Appeals the Commissioner's ruling was affirmed. 34 B.T.A. 479. The case is before us on petition of the wife, with a stipulation that a similar judgment may be entered on the petition of the husband. We refer to the opinion of the Board for the facts in detail. The material facts necessary to a decision may be somewhat briefly stated, as follows:

On October 20, 1926, Davidson received 20,000 shares of the common stock, no par value, of Oklahoma Natural Gas Corporation, for his services in assisting in the organization of said company. The stock was delivered to him under an agreement that he would not sell or in any way trade in it without written permission of White, Weld & Co., another party to the organization proceedings. A joint tax return of the spouses for 1926 did not reflect the receipt of this stock at all. The restriction as to sale was removed in 1927 and the stock was sold at $25 a share, for which Davidson received $24 per share net, $1 going to pay expenses of the sale. This was accounted for on the 1927 tax returns, but a deduction of $110,780 was claimed as resulting from a transaction in which 6000 shares of the stock were turned over to S. W. Sibley. The return showed that on these shares $144,000 was realized; that $33,220 was used to liquidate loans due Sibley or secured through his efforts; and that $110,780 was paid to Sibley as compensation for his services in assisting Davidson in the organization of the Oklahoma Natural Gas Corporation and was deducted. This amount was disallowed and is the basis of the deficiency determined by the Commissioner.

The petition to the Board alleged that the stock when received in 1926 had no fair market value; that the determination of the deficiency was barred by limitation; and that the deduction claimed should have been allowed. The case came on for hearing at Dallas, on December 13, 1933, before Board member Adams. At that time an amended petition was tendered, which materially changed the issues. It also pleaded limitation; alleged that the amount paid to Sibley was in fact $122,780; and that the stock when received in 1926 had a fair market value of $15 per share. In the alternative, in the event the Board should rule with the Commissioner, a redetermination of income, based upon the difference between $15 and $25 per share, was prayed for. An order was entered allowing the amended petition to be filed with the clerk tentatively, granting time to the Commissioner to answer and restricting the hearing to the original petition. Considerable testimony was taken at this hearing but no decision was rendered. The case again came on for hearing at Dallas, on October 15, 1934, before Board member Trammell, who allowed the filing of the amended petition and restricted the hearing to the allegations of that petition. Additional testimony was taken, at the close of which both parties rested. Hon. Jed. C. Adams died on January 29, 1935, some three months after the second hearing. Hon. C. M. Trammell resigned as a member of the Board on February 17, 1936. In the meantime no judgment had been entered by the Board. On the record thus made up, the case was then considered by Board member Murdock, who made findings of facts and rendered an opinion, on April 30, 1936, which decision was reviewed and approved by the Board and became final.

Without setting out the evidence on that point but referring to the facts as found by the Board with approval, we agree with the holding of the Board that there was no substantial evidence to show the stock had any market value in 1926.

Receipts given by Sibley showed that at least 4,000 shares of the stock were delivered to him in trust, as a loan to be used as collateral. It was also shown that a dispute arose between Davidson and Sibley as to the amount Sibley was to receive for his services. This culminated in a suit in a state court by Davidson against Sibley for an accounting, Davidson contending that he had merely loaned the stock to Sibley and Sibley contending that the stock had been delivered to him as his commission and belonged to him. This suit was settled by agreement in March, 1928. On these facts the Board ruled that no payment had been made to Sibley in 1927; and that whatever Sib-

518

ley received as his share of the commission earned by Davidson would be deductible from petitioners' income in 1928. We agree with this ruling of the Board.

█ The return for 1927 was filed June 15, 1928. Under the provisions of section 277 of the Revenue Act of 1926, 44 Stat. 58, the period of limitation was three years. The Commissioner's deficiency letter was dated October 2, 1931, which was more than three years after the returns were filed. However, on June 16, 1930, which was about a year before the initial period of limitation would have expired, Congress adopted a Joint Resolution (46 Stat. 589) extending for one year the three-year period of limitation for assessment, refunds, and credits of income taxes for 1927, in the case of married persons filing separate income tax returns under the community property laws of any state. The Commissioner's deficiency letter was well within this extended period of limitation. Petitioner contends that the Joint Resolution was void as depriving her of property without due process of law, in violation of the Fifth Amendment. At the time the Joint Resolution was adopted the Commissioner had ruled that married couples domiciled in community property states could not divide their income for taxation. Many cases were pending, seeking to reverse this ruling, particularly the case of Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249, involving the law of Texas. There is no doubt Congress intended to preserve the status quo, for the benefit of taxpayers who had acquiesced in the Commissioner's ruling as well as for the benefit of the government. It may be presumed that had the Joint Resolution not been adopted the Commissioner would have acted within the limitation of three years. Petitioner had not acquired any vested rights by limitation when the period was extended. The Joint Resolution was valid. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.

█ Petitioner contends that the Board of Tax Appeals erred in failing and refusing to hear the case de novo because of the death of Board member Adams and the resignation of Board member Trammell and in limiting the issue at the second hearing to the new issue raised in the amended petition. We find nothing in the record that would indicate that petitioner requested a hearing de novo and it is apparent that the Board considered both petitions and the evidence taken at both hearings. The Board is authorized to prescribe rules of practice and procedure. 26 U.S.C.A. § 611. It is usual in the hearing of cases before the Board to have the evidence taken before a division, consisting of one member, whose decision is subject to review by the Board. 26 U.S.C.A. § 618. It is apparent that, as the Commissioner had no opportunity to answer the amended petition, the ruling by Board member Adams that the case should be heard on the original petition was proper. When the case came on for a second hearing, it was also proper to limit the taking of testimony to the additional and inconsistent allegations of the amended petition. It would unnecessarily, and to no good purpose, complicate and delay the disposition of business by the Board if proceedings before one who had ceased to be a member had to be abandoned and held for naught. It was within the sound discretion of the Board to enter judgment on the findings of facts and opinion of Board member Murdock. We find no abuse of discretion in this respect. Fritz v. Commissioner (C.C.A.) 76 F.(2d) 460.

█ Petitioner assigns error as follows: "The United States Board of Tax Appeals erred in refusing to permit witness, S. W. Sibley, and other witnesses to testify as to the fair market value in 1926 of the common capital stock of the Oklahoma Natural Gas Corporation." Assignments of error should be specific. We must confine our consideration of this assignment to the alleged refusal of the Board to permit Sibley to testify as to the fair market value of the stock in 1926. Sibley testified extensively as to facts within his knowledge. It is plain from his testimony that he was not qualified to give his opinion as an expert on the market value of the stock. Whether a witness is qualified to testify as an expert is a question for the judge presiding at the trial and his decision thereon is conclusive, unless clearly erroneous as a matter of law. Inland & Seaboard Coasting Co. v. Tolson, 139 U.S. 551–559, 11 S. Ct. 653, 35 L.Ed. 270. In fact, the rule is so well settled that it is hardly necessary to cite authorities in support thereof. We find no abuse of discretion on this point.

Reversible error not appearing, the petition is denied and the judgment of the Board is affirmed.